Peter Chu (SBN 251705)
pchu@taulersmith.com
Camrie Ventry (SBN 355853)
cventry@taulersmith.com
TAULER SMITH LLP
626 Wilshire Boulevard, Suite 1100
Los Angeles, California 90017
Tel: (213) 927-9270

*Attorneys for Plaintiff*
*Dana Hughes*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DANA HUGHES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELLSWORTH CORPORATION, a Wisconsin corporation; DOES 1 through 25, inclusive<br><br>Defendants. | Case No. 2:26-cv-06952<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>**1. VIOLATIONS OF THE CALIFORNIA TRAP AND TRACE LAW (CAL. PENAL CODE § 638.51)** |

## I. INTRODUCTION

1. Defendant Ellsworth Corporation ("Ellsworth" or "Defendant") is a distributor of adhesive material and products. As part of Defendant's marketing regime, Ellsworth has partnered with TikTok to install sophisticated software on its landing page to learn the location, source, and identity of consumers who happen to land on their website.

2. Plaintiff Dana Hughes ("Plaintiff") visited Defendant's website on October 4, 2025. Without Plaintiff's knowledge or consent, Defendant deployed a de-anonymization process to identify Plaintiff using incoming electronic impulses generated from Plaintiff's device, as further described herein. Defendant's installation of the TikTok tracing process violates California's Trap and Trace Law, codified at California Penal Code § 638.51.

## II. JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because the total matter in controversy exceeds $5,000,000 and there are over 100 members of the proposed class. Further, at least one member of the proposed class is a citizen of a State within the United States and at least one defendant is the citizen or subject of a foreign state.

4. This Court has personal jurisdiction over Defendant as exercising jurisdiction over Defendant would be consistent with traditional notion of fair play and substantial justice and is not, under California's "long-arm statute" (see Cal. Code Civ. Proc. 410.10), "inconsistent with the Constitution of this state or the United States." Defendant has sufficient minimum contacts in the State of California or otherwise purposefully directed its activities in California, including the district where this Court sits, by regularly and knowingly engaging with individuals in California through the use of its website at http://gluedots.com (the "Website") to conduct financially beneficial commercial surveillance on California residents, including Plaintiff. But for Defendant's

purposeful contact with the forum state, Plaintiff would not have suffered harm alleged herein.

5. Defendant purposefully directed its activities with California, and it purposely and voluntarily availed itself of California and derives commercial benefits from its California activities. Defendant conducted business in California, expended significant efforts and expenditures to market its services in California, and entered into an agreement with TikTok, Inc. a California corporation headquartered in Culver City, California, to use the TikTok Software (as defined below) created by TikTok, Inc. on Defendant's Website to collect and transmit identifying information, including the visitors' location, from California visitors like Plaintiff, to TikTok, for mutual financial benefits.

6. Plaintiff's claims arise directly from Defendant's California-directed conduct because Plaintiff was located in California when Defendant's Website caused her browser to transmit identifying electronic impulses to TikTok and Defendant. But for Defendant's installation and use of the TikTok Software on the Website, Plaintiff's California-based visit would not have resulted in the unlawful disclosure of her identifying routing, addressing, signaling, device, and behavioral information via the TikTok Software.

7. Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1391 because (1) Defendant is authorized to conduct business in this District and has intentionally availed itself of the laws and markets within this District; (2) Defendant does substantial business within this District; (3) Defendant is subject to personal jurisdiction in this District because it has availed itself of the laws and markets within this District; and (4) a substantial part of the events or omissions, as alleged herein, giving rise to Plaintiff's claim occurred within the judicial district where this Court sits.

## III. PARTIES

8. Plaintiff Dana Hughes ("Plaintiff") is, and at all times relevant to this complaint has been, a citizen of California residing and located within the Central District

of California. Plaintiff maintains reasonable expectations of privacy when browsing websites. Defendant systematically violated these expectations through its unauthorized surveillance activities.

9. Defendant Ellsworth Corporation is a Wisconsin corporation with its principal place of business at N117 W18711 Fulton Drive, Germantown, WI 53022.

10. The above-named Defendant, along with its affiliates and agents, are collectively referred to as "Defendants." The true names and capacities of the Defendants sued herein as DOE DEFENDANTS 1 through 25, inclusive, are currently unknown to Plaintiff, who therefore sues such Defendants by fictitious names. Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein. Plaintiff will seek leave of Court to amend the Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

11. Plaintiff is informed and believes that at all relevant times, every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and scope of said agency and/or employment with the full knowledge and consent of each of the other Defendants, and that each of the acts and/or omissions complained of herein was ratified by each of the other Defendants.

## IV. FACTUAL ALLEGATIONS

### A. Defendant's Website and the TikTok Software.

12. Ellsworth is the proprietor of the Website, an online platform that sells adhesive sticker products.

13. Defendant entered into an agreement with TikTok that allowed Defendant to install and use software created by TikTok (the "TikTok Software") on its Website. TikTok, the creator of the website software, is headquartered in Culver City, CA.

14. Defendant has installed the TikTok Software on its Website in order to identify website visitors, including Plaintiff, and facilitate the collection and analysis of user data for mutual financial gain of both Defendant and TikTok.

15. While in California, Plaintiff visited Defendant's Website on October 4, 2025, after the TikTok Software was installed and within the statute of limitations period.

16. The TikTok Software acts via a process known as "fingerprinting." Put simply, the TikTok Software collects as much data as it can about an otherwise anonymous visitor to the Website and matches it with existing data TikTok has acquired and accumulated about hundreds of millions of Americans.

17. The TikTok Software gathers device and browser information, geographic information, referral tracking, and URL tracking by running code or "scripts" on the Website to send user details, including Plaintiff's information, to TikTok.

18. By the time the user accesses the Website, the TikTok Software has already commenced collecting data from the user. Thus, even though the Website has a "cookie banner" the information has already been sent to TikTok regarding the user's visit. The TikTok Software transmits instructions to users' web browsers, including Plaintiff's so that Plaintiff's and users' personal information is sent to TikTok's servers. This level of data transmission is not necessary for basic website functionality.

19. Additionally, since Ellsworth has decided to use TikTok's "AutoAdvanced Matching" technology, TikTok scans every website for information. Thus, when the website asks for information, such as name, date of birth, and address, the information is sent simultaneously to TikTok, so that TikTok can isolate with certainty the individual to be targeted.

20. The TikTok Software runs on virtually every page of Ellsworth's website, sending to TikTok images of website user's interests. An image of the code, as it appears side by side (and simultaneously) with the TikTok AutoAdvanced Matching tracking code Ellsworth has placed on the page, can be seen here:




21. The Ellsworth website instantly sends communications to TikTok when a user lands on the Website, and every time a user clicks on a page. In the example below, the right side of the image shows the various TikTok scripts being run by



Defendant, and the incoming electronic impulses being sent to TikTok to add to their collection of user behavior:

**B. <u>The TikTok Software is a Trap and Trace Device.</u>**

22. California law defines a "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

23. The TikTok Software is a process to identify the source of electronic communication by capturing incoming electronic impulses and identifying dialing, routing, addressing, and signaling information generated by users, who are never informed that the Website is collaborating with the Chinese government to obtain their phone number and other identifying information.

24. The TikTok Software is "reasonably likely" to identify the source of incoming electronic impulses. In fact, it is designed solely to meet this objective.

25. Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

26. CIPA imposes civil liability and statutory penalties for the installation of trap and trace software without a court order. California Penal Code § 637.2; *see also*, *Moody v. C2 Educ. Sys.* (C.D. Cal. July 25, 2024) No. 24-cv-04249, 2024 WL 3561367, at *3.

27. Defendant did not obtain Plaintiff's express or implied consent to be subjected to data sharing with TikTok for the purposes of fingerprinting and de-anonymization.

## <u>CLASS ACTION ALLEGATIONS</u>

28. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

29. Plaintiff brings this action individually and on behalf of all others similarly situation (the "Class") defined as follows:

30. All persons within California whose identifying information was sent to TikTok as a result of visiting the Website within the statute of limitations period.

31. NUMEROSITY: Plaintiff does not know the number of Class Members but believes the number to be in the thousands, if not greater. The exact identities of Class Members may be ascertained by the records maintained by Defendant.

32. COMMONALITY: Common questions of fact and law exist as to all Class Members and predominate over any questions affecting only individual members of the Class. Such common legal and factual questions, which do not vary between Class Members, and which may be determined without reference to the individual circumstances of any Class Member, include but are not limited to the following:

33. Whether the TikTok Software is a trap and trace process as defined by California law;

34. Whether Plaintiff and Class Members are entitled to statutory damages;

35. Whether Plaintiff Class Members are entitled to injunctive relief;

36. Whether Plaintiff and Class Members are entitled to nominal damages; and

37. Whether Class Members are entitled to disgorgement of unlawfully obtained data.

38. TYPICALITY: As a person who visited Defendant's Website and whose communication was subjected to a trap and trace process on Defendant's Website, they are typical of the class.

39. ADEQUACY: Plaintiff will fairly and adequately protect the interests of the members of the Class. Plaintiff has retained attorneys experienced in the class action litigation. All individuals with interests that are actually or potentially adverse to or in conflict with the class or whose inclusion would otherwise be improper can be excluded.

40. SUPERIORITY: A class action is superior to other available methods of adjudication because individual litigation of the claims of each Class Member is

impracticable and inefficient. Even if every Class Member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts in which individual litigation of numerous cases would proceed and address identical issues.

41. Defendant's actions inflicted direct and tangible harm upon Plaintiff and Class Members which is concrete and not speculative. An individual's data constitutes a form of personal property that was located on Plaintiff's own device, and Defendant effectively stole this property. The detailed digital profile that Defendant assembled possesses a quantifiable market value, with estimates ranging from $0.10 to $0.50 for a basic consumer profile and exceeding $5.00 for a B2B prospect interested in high-value professional services. Defendant misappropriated this valuable asset for its own commercial enrichment. Defendant accomplished this by intentionally through sending electronic code to Plaintiff's device that extracted personal information about Plaintiff from that device and transmitted that information to TikTok. This extraction from Plaintiff's device and transmission to TikTok further prevented and interfered with Plaintiff's ability and right to own the data on her own device and control where it would be sent it and how would be used.

42. Most importantly, Plaintiff and the Class were harmed because the information was used to fingerprint and identify the needle of an individual’s visit from the haystack of all other anonymous internet traffic. Defendant and TikTok had no right to attempt to uncover and disclose anything about Plaintiff or Class Members’ anonymous visits to Defendant’s Website, much less transmit personal information to TikTok and essentially forcing Plaintiff and Class Members to do business with a registered Data Broker. This information was not for sale.

## **FIRST CAUSE OF ACTION**

### **Violations of the California Trap and Trace Law**

### **Cal. Penal Code § 638.51**

43. California’s Trap and Trace Law is part of the California Invasion of Privacy Act (“CIPA”) codified at Cal. Penal Code 630, *et. seq*.

44. CIPA was enacted due to curb "the invasion of privacy resulting from the continual and increasing use of" certain technologies determined to pose "a serious threat to the free exercise of personal liberties." CIPA extends civil liability for various means of surveillance using technology, including the installation of a trap and trace device.

45. A "trap and trace device" as "a device or process that captures the incoming electronic or other impulses that identify the originating number or other dialing, routing, addressing, or signaling information reasonably likely to identify the source of a wire or electronic communication, but not the contents of a communication." California Penal Code § 638.50(c).

46. California Penal Code §638.51 provides that "a person may not install or use…a trap and trace device without first obtaining a court order…" § 638.51(a).

47. Defendant uses a trap and trace process on its Website by deploying the TikTok Software on its Website, because the software is designed to capture the phone number, email, routing, addressing and other signaling information of website visitors. As such, the TikTok Software is solely to identify the source of the incoming electronic and wire communications to the Website. The TikTok Software does not collect the content of website visitors' communication to the Website.

48. Defendant did not obtain consent from Plaintiff before using trap and trace technology to identify users of its Website and has violated Section 638.51.

49. As a proximate result of Defendant's conduct alleged herein, Plaintiff's injuries, including, without limitation, Plaintiff's loss of control over personal information.

50. CIPA imposes civil liability and statutory penalties for violations of § 638.51.

51. Therefore, Plaintiff is entitled to injunctive relief and statutory damages under California Penal Code § 637.2 and the equitable relief prayed for herein.

## PRAYER

WHEREFORE, Plaintiff prays for the following relief against Defendant:

1. An order enjoining Defendant's conduct as alleged herein and ordering disgorgement of data provided to TikTok through the TikTok Software;

2. Statutory damages pursuant to CIPA; and

3. All other relief that would be just and proper as a matter of law or equity, as determined by the Court.

DATED: June 25, 2026

TAULER SMITH LLP

By: */s/ Peter Chu*
Peter Chu, Esq.
*Attorneys for Plaintiff*
*Dana Hughes*

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury.

DATED: June 25, 2026

TAULER SMITH LLP

By: */s/ Peter Chu*

Peter Chu, Esq.
*Attorney for Plaintiff*
*Dana Hughes*